JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Richard C. Angino & Alice K. Angino

(b) County of Residence of First Listed Plaintiff Dauphin
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Angino & Lutz, 4503 N. Front St., Harrisburg, PA 17110
(717)-238-6791

## DEFENDANTS

Warren/GP Corp., et al.

County of Residence of First Listed Defendant ______
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause: Contract breach and accounting

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE ______ DOCKET NUMBER ______

DATE 08/12/2015

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD C. ANGINO and ALICE K. ANGINO,<br>Plaintiffs,<br><br>v.<br><br>WARREN/GP CORP., WARREN NMGP, LLC, c/o LEHMAN BROTHERS HOLDINGS, INC., SOMERSET ASSOCIATES, SOMERSET/GP ASSOCIATES L.P., SOMERSET MGP, INC., CHUBB ASSOCIATES, L.P., THE CHUBB CORPORATION, FEDERAL INSURANCE COMPANY, and ERNST & YOUNG, LLP<br>Defendants | CIVIL ACTION NO.<br><br>(JUDGE ____________________)<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

## I. PRELIMINARY STATEMENT

1. This is a limited partner contract/tort/accounting action by Richard C. Angino and Alice K. Angino, husband and wife, purchasers of two of 276 limited partnership interest units of Somerset Associates exclusive offering from the General Partners and E. F. Hutton & Company Inc. in the total amount of $32,016,828 on November 11, 1983. **Exhibit A.**

## II. JURISDICTION AND VENUE

2. This Court has diversity jurisdiction based upon the parties being of different states and the disputed amount being in excess of $75,000.

3. Venue exists in the Middle District because Defendant Somerset Associates initial solicitation was of Plaintiffs who reside in the Middle District.

## III. PARTIES

4. Plaintiffs Richard C. Angino and Alice K. Angino, husband and wife, are adult individuals residing at 2040 Fishing Creek Valley Road, Harrisburg, Dauphin County, Pennsylvania.

5. Warren/GP Corp., and Warren NMGP, LLC c/o Lehman Brothers Holdings, Inc. are a Delaware corporation and Delaware domestic Limited Liability Company, respectively, with a registered address for service c/o The Prentice-Hall Corporation System Inc., 2711 Centerville Road, Suite #400, Wilmington, , New Castle County, Delaware 19808.

6. Somerset Associates is a New Jersey domestic Limited Partnership with a registered address for service at New York City, N.Y.

7. Somerset/GP Associates, L.P. and Somerset MGP, Inc. are a Delaware domestic Limited Partnership and a Delaware domestic business corporation, respectively, with a registered address for service c/o Corporation Service Company, 2711 Centerville Road, Suite #400, Wilmington, New Castle County, Delaware 19808.

8. Chubb Associates, L.P. and the Chubb Corporation are a New Jersey domestic Limited Partnership and a New Jersey foreign business corporation, respectively, having their principal place of business in a state other than the Commonwealth of Pennsylvania.

9. Federal Insurance Company is a corporation incorporated and having its principal place of business address at 251 North Illinois, Suite #1100, Capital Center, Indianapolis, Indiana 46204, and a mailing address at 15 Mountain View Road, Warren, NJ 07061.

10. Ernst & Young, LLP, is an entity with its principal place of business in a state other than Pennsylvania.

## IV. <u>FACTUAL BACKGROUND</u>

11. On November 11, 1983, pursuant to a Confidential Private Placement Memorandum, Somerset Associates, through an exclusive offering of E.F. Hutton

& Company Inc. solicited $32,016,828 of 276 units limited partnership interests at $116,003 each, plus interest on any deferred portion thereof, with a minimum required investment of one unit. *See* **Exhibit A**, including Supplement to Confidential Private Placement Memorandum.

12. The Confidential Private Placement Memorandum provided details of the solicitation, including:

> Somerset Associates (the "Partnership") is a New Jersey limited partnership formed to acquire a leasehold interest in a parcel of land located in Warren Township, New Jersey, and fee title to the buildings and other improvements thereon. The land and improvements have been leased to Federal Insurance Company, a New Jersey corporation ("Federal"), on a completely net basis for use as a corporate headquarters office building. The lease obligations of Federal have been guaranteed by its parent, The Chubb Corporation, a New Jersey corporation ("Chubb").

**Exhibit A**

13. The Confidential Private Placement Memorandum specifically addressed numerous topics. *See* Table of Contents 1-59 with Schedules of Financial Projections at S-1. **Exhibit A**

14. The Summary of Memorandum, p. 3, *et seq.* described "The Partnership," "General Partners and GP Units", "Proposed Transaction", etc.

15. The Summary of Memorandum referenced the "Partnership Investment Objectives":

> The investment objectives of the Partnership are:

(a) Realization of cash flow that may be available to investors during the later years of the extended terms of the Lease;

(b) Realization of an increase in equity resulting from appreciation in the value of the Improvements to be realized upon sale or refinancing of the Property or upon expiration of the final term of the Lease (including any exercised extended terms), through the leasing or other use of the Property until the termination of the Ground Lease; and

(c) Realization of any tax benefits that may be available to investors during the initial years of the Partnership, during which the Partnership's operations are expected to result in tax losses.

**Exhibit A,** p. 4

16. **Allocation of Profits, Losses and Cash Distributions**

The Partnership's taxable income and losses, Net Cash Receipts, as defined herein, and net proceeds of any Disposition of the Property, will be allocated 99% to the Limited Partners (and proportionately to Bardell for any month during which it continues to hold GP Units) and 1% to the General Partners. However, any taxable income arising from a Disposition of the Property will be allocated first to each Partner with a negative capital account in an amount sufficient to eliminate the deficit. "Net Cash Receipts" does not include receipts derived from the sale of the Units, from the Permanent Loan or from the Purchase Money Note. "Net Cash Receipts" means, for any fiscal year of the Partnership, all receipts derived by the Partnership from the ownership of the Property (exclusive of any proceeds from any Disposition of the Property) less (i) all disbursements or expenses paid or accrued by or on behalf of the Partnership in such fiscal year (exclusive of expenses financed or to be financed by new indebtedness) and (ii) such reserves as the General Partners deem reasonably necessary for the proper operation of the Partnership's business, which shall in no event be an amount less than the Partnership's current accounts payable.

> Each Limited Partner will share in the allocation of each of the items allocated to the Limited Partners as a group in the ratio that his Capital Contribution bears to the total of the Capital Contributions of all Limited Partners (plus the Capital Contribution of Bardell for any unredeemed GP Units). The allocations and distributions made to the General Partners (except for those attributable to Bardell's GP Units) will be allocated between them as they shall agree. EFH Atlantic intends to assign its allocations and distributions to a limited partnership of which it is general partner. See "Summary of Limited Partnership Agreement" and Exhibit A to this Memorandum.

**Exhibit A**

17. The Memorandum included a **PROJECTION SUMMARY** from 1983 to 1999. **Exhibit A,** p. 7.

18. The Projection Summary from March 31, 1999 projected total losses of $608,807 with a loss as a percentage of annual investment of 350%. **Exhibit A,** p. 7.

19. The **USE OF PROCEEDS** is referenced on page 12 with the Capital Contributions of the Limited Partners to the Partnership of $32,016,828 together with $15,937,068 of interest on the deferred portion of the subscription price (resulting in total funds of $47,953,896) will be used by the Partnership approximately as set forth in the following table. **Exhibit A**.

20. The **DESCRIPTION OF THE LEASE**, p. 29 included **Term,** "Interim Term," "Primary Term," commencing on October 1, 1983, and terminating on March 31, 1999.

> The Lease may be extended by Federal for one additional term of 15 years (the "First Extended Term") and five additional consecutive terms of five years each (the "Extended Terms"). If Federal elects not to exercise its right to the First Extended Term, it must make an offer to purchase the Property under the terms applicable to an economic discontinuance, described herein.

**Exhibit A.**

21. The "completely net" lease requires rental payments starting at $40,000 for the first six months and continuing with specific designated amounts through years 32 through 56. **Exhibit A.**

22. Under **Alterations and Additions**, p. 29, the Lease provides that "Federal may, at its expense, make additions to and alterations of the improvements, and construct additional improvements provided that the then fair market value of the Property shall not be decreased thereby,

* * *

> If such financing of additions is consummated, the Lease will be amended to provide for (i) additional amounts of Basic Rent at least sufficient to amortize 100% of the principal and interest of any indebtedness issued to finance such additions by the expiration of the First Extended Term (or, if the additions are made after the expiration of the First Extended Term, by the expiration of any Extended Terms then exercised by Federal) . . .

**Exhibit A**, p. 30

23. Under **Partnership Allocations,** p. 38-39:

> Profits and losses for tax purposes will be allocated among the

> Partners in accordance with the Limited Partnership Agreement.
>
> * * *
>
> The Limited Partnership Agreement provides that all profits, losses and cash flow will be allocated 99% to the Limited Partners . . .

**Exhibit A.**

24. Under "**Treatment of the Partnership as Owner of the Property**" includes, (1) *Fair Market Value Purchase and Reasons Rents* and (2) *Opportunity for Profit*:

> In this case the Partnership will derive insubstantial cash flow during the Primary Term of the Lease. However, the Partnership has the opportunity, after the tenth year, to profit by refinancing the Purchase Money Note, and after the fifteenth year, the Permanent Loan. The Partnership may establish a reasonable expectation of making a profit during the Extended Terms of the Lease or making a profit if Federal does not extend the Lease. In this regard, the General Partners believe that the Property will have substantial value at the end of the Primary Term in excess of the amount of the indebtedness that will then be outstanding.

**Exhibit A,** p.40-41

25. Under the heading "**Depreciation**":

> The Partnership will claim 15-year straight-line depreciation deductions pursuant to the ACRS recovery percentage provisions enacted in ERTA.

**Exhibit A,** p. 43

26. Under the heading "**Cash Distributions**":

> Cash distributions from a partnership are generally not equivalent to partnership income as determined for income tax purposes or as determined under generally accepted accounting principles. If cash distributions to a Limited Partner by the Partnership in any year, including a deemed distribution by virtue of a reduction of a Limited Partner's share in any nonrecourse liabilities, exceed his share of the Partnership's taxable income for that year, the excess will reduce his tax basis in his Partnership interest. If a Limited Partner's tax basis in his Partnership interest is reduced to zero, his share of any additional cash distributions for any year, including his share in any reduction in nonrecourse liabilities, in excess of his share of Partnership taxable income for such year will be taxable to him as though it were a gain on the sale or exchange of his Partnership interest.

**Exhibit A,** p. 45

27. Under the heading **"Tax Liabilities in Later Years"**:

> After the Partnership has conducted operations for a certain number of years, net profits allocable to the Limited Partners in some years will exceed the amount of cash distributions to them in such years. This is not expected to occur during the first fifteen years of Partnership operations. This situation typically results when a partnership's nondeductible mortgage amortization payments exceed its depreciation deductions. If a Limited Partner's tax liabilities from the Partnership in any year exceed the amount of cash distributed to him, he will be required to pay such liabilities with funds from other sources.

**Exhibit A,** p. 45

28. Relying upon the November 11, 1983 Offering, Richard C. and Alice K. Angino each purchased one unit or a total of two units.

29. Starting January 24, 1984, Plaintiffs started to receive

communications from E. F. Hutton addressed to the Limited Partners. **Exhibit B.**

30. Plaintiffs started to receive annual reports, e.g. March 28, 1984, Somerset Associates Annual Report 1983, Kenneth Leventhal & Company, Certified Public Accountants. **Exhibit C.**

31. In addition to annual reports, Plaintiffs started to receive communications from Somerset Associates, e.g. August 6, 1986 enclosing the 1985 Annual Report:

> We are pleased to report that operating results for the second full year of operations were close to original projections.

**Exhibit D.**

32. Somerset provided by letter of November 16, 1987, 1987 estimated tax information, **Exhibit E**. *Also see*, December 13, 1988 and February 3, 1989 communications, **Exhibit F and G**.

33. On August 15, 1990, Somerset Associates sent a letter to the Limited Partners to the effect that AT&T Credit exercised its option to proceed with the second closing of the redemption transaction with the Partnership. **Exhibit H.**

34. By communication of April 3, 1991, Somerset Associates enclosing the 1990 Form 1065 Schedule K-1 with detailed supplemental footnotes to assist Partners. A distinction was made with respect to the Limited Partners who did not elect to participate in the redemption transaction with AT&T Credit Corporation and those who did. **Exhibit I.**

35. By communication of April 5, 1993, Somerset stated "[p]ursuant to the terms of the lease agreement, on April 1, 1992, the tenant's annual rent increased to $8,590,306 from the previous level of $7,908,906. The Partnership utilizes rental income to make principal and interest payments due in association with the mortgage notes which funded the acquisition of the property. Please refer to note 5 to the accompanying financial statements for additional information regarding the Partnership's mortgage notes." **Exhibit J.** *Also see*, Ernst & Young Audited Financial Statement, December 31, 1991. **Exhibit K.**

36. Commencing in 1993, the Limited Partners started to receive financial information directly from Somerset Associates. *See* **Exhibit J.**

37. Page 8 of the Somerset Financial Statement referenced the annual rents to increase to $21,468,088 from April 1, 1999 to March 31, 2009, reduced to $9,703,372 from April 2009 to March 31, 2014, and increased to $10,561,700 on April 1, 2014 – March 31, 2039, **Exhibit J**.

38. Ernst & Young had a single page Report of Independent Auditors. **Exhibit J.**

39. By communication April 13, 1994, Plaintiffs were advised that on July 31, 1993, Shearson Lehman Brothers sold certain of its domestic retail and asset management businesses to Smith Barney, Harris Upham & Co. Incorporated. Subsequent to the sale, Shearson Lehman Brothers changed its name to Lehman

Brothers, Inc. The transaction did not affect the ownership of the General Partner. **Exhibit L.**

40. The 1995 summary was provided by letter dated May 10, 1996. **Exhibit M.**

41. 1994 and 1995 statements and projections through 2039 were provided. **Exhibit M.**

42. On October 8, 1996, Somerset Associates communicated to Plaintiffs:

> Dear Somerset Class A Limited Partner:
>
> We are pleased to report that the refinancing transaction outlined in the Consent Solicitation Document dated July 20, 1996 was approved by a majority-in-interest of all classes of limited partners and the transaction was completed on September 12, 1996. Enclosed please find a check in the amount of $64,237.24 per unit . . .

**Exhibit N.**

43. On June 18, 1999, Richard Angino communicated to Kristin L. Hughes as to a rejection letter of April 14, 1999 suggesting that Plaintiffs had "transferred part or all of your partnership interest to a party with whom you had more than an arms-length relationship." Plaintiff stated that "the partnership interest has always been in the name of my wife, Alice K. Angino and me" and referencing an Investor Note dated December 1, 1983, wherein my wife and I purchased two units". **Exhibit O.**

44. As anticipated in the initial documents, the partnership became

profitable in 1999 referencing $532,505 of income versus $12,359,386 loss in 1998. **Exhibit P.**

45. Since 1999, the Partnership showed increased profitability, e.g., communications December 17, 2001 (**Exhibit Q**), January 23, 2003 (**Exhibit R**), and June 23, 2003 (**Exhibit S**).

46. On June 23, 2003, the Partnership paid a cash distribution of $14,348 per unit to the Class A and Class B Limited Partners "representing excess cash flow from the Partnership's 2001 and 2002 operations. . . . We currently anticipate that cash distributions will be paid to the Class A and Class B limited partners on an annual basis in the first quarter of <u>each subsequent year</u>." **Exhibit S**

47. By letter of April 14, 2004, a cash distribution of approximately $10,761 per unit was paid. Although $10,761 per unit was paid in 2004, the partner's share of income referenced $62,635 and the distributive share of partnership income as $62,635. **Exhibit T**. Plaintiffs did not receive $62,635.

48. Although stating that the distribution would occur during the first quarter by letter dated June 28, 2004, the cash distribution of $10,761 per unit occurred at the end of the second quarter. **Exhibit U**. Plaintiffs' reportable income for IRS and State of New Jersey taxes continued to be six and seven times the cash distributions. *See* June 28, 2004, **Exhibit U**, September 1, 2005, **Exhibit V**. The April 4, 2005 communication cut in half the previous year's cash

distributions whereas the Partner's share of income reported to the State of New Jersey was $74,867. **Exhibit W**.

49. Tax Schedule K-1 for 2005 references Plaintiffs' interest as being .7246357% of a net real estate income of $91,734. **Exhibit X**.

50. Year after year, Plaintiffs received extremely small fractional cash distributions – none of which was in the first quarter. **Exhibit Y**.

51. The Partnership's operations generated taxable income of $12,392,196 for year ending December 31, 2005; $13,326,227 for the year 2006; $14,332,683 for 2007. **Exhibit Z**.

52. By communication of June 15, 2011, the cash distribution of June 15, 2011 was reduced to $3,945.64 per unit or $6,479.39 for Plaintiffs' two units. **Exhibit AA**. *Also see* correspondence of June 7, 2012 (**Exhibit BB**), and January 22, 2013 (**Exhibit CC**).

53. The Financial Statements Federal Income Tax Basis for the years ending December 31, 2012 and 2011 were sent to Plaintiffs with a report of the independent auditors, Ernst & Young. **Exhibit DD**.

54. On September 26, 2014, Somerset Associates sent a notice to the Limited Partners providing 2012/2011 audited financial statements with an apology for the delay, suggesting that administrative issues needed to be resolved with the auditors before they would release the statements. A cash distribution was

made in August of 2014 of $4,304 per unit. **Exhibit DD**.

55. A communication from Landmark Capital II, LLC was sent on October 22, 2014 to Plaintiffs stating:

> Number of Limited Partnership Units: 2.0
> Price Paid Per Unit: $7,500.00
> **Net Cash to Seller: 15,000.00**
>
> We are offering you an opportunity to sell your limited partnership interests (the "Units") in **Somerset Associates** (the "Partnership") for cash in the amount of **$7,500.00 per Unit** less any distributions after October 22, 2014 (the "Record Date").
>
> * * *
>
> - **Liquidity Now.** Although there are some limited resale mechanisms available to limited partners, there is no formal market for Units.
> - **K-1/Tax Filings.** Partners may wish to avoid future delay and complications associated with K-1 preparation needed for filing personal income tax returns.
> - **No Fees and No Charges.** There is no sales commission and Landmark Capital II, LLC will pay any transfer fee.

**Exhibit EE**.

56. Landmark Capital did not identify itself in the October 22, 2014 solicitation or give any basis for its suggestion that Plaintiffs paid $7,500.00 per unit.

57. On June 17, 2015, Warren/GP Corp. identified itself as the Managing General Partner and apparently identified other entities. **Exhibit FF**.

58. On August 6, 2015, Somerset Associates sent a communication to Limited Partners, including Richard C. and Alice K. Angino. **Exhibit GG**.

59. Somerset's communication originated from 14911 Quorum Drive, Suite 200A, Dallas, TX 75254 and enclosed the 2013 audited Financial Statements for Somerset Associates: "We apologize for the delay in providing these financial statements, but several administrative issues needed to be resolved with the auditors before they would release the statements. The 2014 financials are in process and will be forwarded to investors when they are finalized." **Exhibit GG.**

60. Somerset Associates' August 6, 2015 communication was signed by Warren/GP Corp., Managing General Partner, referenced an August 2014 "distribution of approximately $4,304 per unit to the Class A and Class B limited partners representing excess cash flow from the Partnership's 2013 operations. We currently anticipate that cash distributions will continue to be paid to the Class A and Class B limited partners on an annual basis, and that the distribution from 2014 operations will be paid in the near future. Please note, however, that the Partnership's ability to pay future distributions is dependent on the operating results of the Partnership and it may be necessary to reduce or eliminate future distributions if actual operating results vary." **Exhibit GG.**

61. Although the August 6, 2015 communication to limited partners stated that the distribution from the 2014 operations "will be paid in the near future," a letter dated August 5, 2015 from Warren/GP Corp., Managing General Partner in a communication provided a cash distribution of $1,793.47 per unit to the Class A

and Class B limited partners subject to a deduction for New Jersey taxes. **Exhibit HH.**

62. The August 5, 2015 distribution allegedly was based upon excess cash flow from the partnership's 2014 operations, whereas, the August 6, 2015 communication stated:

> The 2014 financials are in process and will be forwarded to investors when they are finalized.

Count I
RICHARD C. ANGINO AND ALICE K. ANGINO V. WARREN GP CORP., WARREN NMGP, LLC, c/o LEHMAN BROTHERS HOLDINGS, INC., SOMERSET ASSOCIATES, THE SOMERSET GP ASSOCIATES, SOMERSET MFP, INC., CHUBB ASSOCIATES, LP, THE CHUBB CORPORATION, AND FEDERAL INSURANCE COMPANY,
Breach of Contract

63. Plaintiffs incorporate all of the previous allegations by reference.

64. Plaintiffs entered into a contractual relationship with Somerset Associates in response to a solicitation of them by a Confidential Private Placement Memorandum dated November 11, 1983, **Exhibit A.**

65. Defendants' predecessors breached their contract with Plaintiffs by taking Plaintiffs' money, investing same, and starting in 1999 to the present withholding Plaintiffs' percentage share of income.

66. Plaintiffs paid interest totalling $115,486 for a total investment of $347,492. **Exhibit A, p. 7.**

67. Plaintiffs have complied with all the terms and conditions for almost

32 years.

68. As referenced in paragraphs 1-61, and particularly the Confidential Placement Memorandum and annual communications, Somerset Associates breached their contract with Plaintiffs by:

a. refusing to acknowledge and follow the investment objectives of the Partnership, **Exhibit A, p. 4**.;

b. violating the clear terms of Allocation of Profits, Losses and Cash Distributions, **Exhibit A, p. 5**;

c. the Use of Proceeds, **Exhibit A, p. 12**;

d. Alterations and Additions, **Exhibit A, p. 29-30**;

e. Partnership Allocations, **Exhibit A, p. 38-39**;

f. Treatment of the Partnership as Owners of the Property, **Exhibit A, p. 41**;

g. Cash Distribution, **Exhibit A, p. 45**;

h. Tax Liability in Later Years, **Exhibit A, p. 45** and

i. Failing to consider the reasonable expectations of the non-redeeming limited partners, including Plaintiffs and their fiduciary duty to the minority interest of the non-redeeming limited partners.

69. Somerset Associates misrepresented the terms of the 1983

Memorandum so as to provide cash distributions contrary to the terms of the Memorandum and the reasonable expectations of the limited partners, contrary to its fiduciary obligation to the limited partners, by making cash distributions "representing excess cash flow from the Partnership's 2001 and 2002 operations". **Exhibit S, ¶45**, . . . contrary to the interest of the minority non-redeeming limited partners, including Plaintiffs.

70. Somerset Associates although promising to pay cash distributions to the Class A and Class B Limited Partners on an annual basis in the first quarter of each subsequent year, **Exhibit S, ¶45,** failed to abide by its commitment and made payments later and later in the subsequent years.

71. Somerset Associates' Annual Reports to the limited partners, including non-redeeming limited partners, including Plaintiffs, failed to provide sufficient information, failed to conform with the terms and conditions of the solicitation Memorandum, disregarded Somerset's fiduciary duties and the reasonable expectations of the limited partners, made decisions for the benefit of Defendants and Federal Insurance Company, as well as the majority limited partners, and contrary to the minority limited partners, including Plaintiffs.

72. Somerset Associates violated the clear terms of the solicitation Memorandum and its fiduciary duty and the reasonable expectations of the limited partners by expanding the individuals and entities involved in the determination of

profits and distributions and placed Chubb, Federal, and the Limited Partnership buyout group's interest above the non-redeeming group.

73. Somerset Associates and their decision-making entities entered into security obligations and debt in 1996 and 1999 contrary to the expressed investment objectives of the Partnership, the allocation of profit, losses and cash distributions, the use of proceeds, alterations and additions, Partnership allocations, treatment of the Partnership as owner of the property, depreciation cash distributions, and tax liability in later years. **Exhibit A**.

74. Defendant Warren/GP Corp., et al. Landmark Capital II, LLC, entered the picture and without identifying itself sent a communication on October 22, 2014 to Plaintiffs stating:

| | |
|---|---|
| Number of Limited Partnership Units: | 2.0 |
| Price Paid Per Unit: | $7,500.00 |
| **Net Cash to Seller:** | **15,000.00** |

> We are offering you an opportunity to sell your limited partnership interests (the "Units") in **Somerset Associates** (the "Partnership") for cash in the amount of **$7,500.00 per Unit** less any distributions after October 22, 2014 (the "Record Date").
>
> * * *
>
> - **<u>Liquidity Now.</u>** Although there are some limited resale mechanisms available to limited partners, there is no formal market for Units.
> - **<u>K-1/Tax Filings.</u>** Partners may wish to avoid future delay and complications associated with K-1 preparation needed for filing personal income tax returns.
> - **<u>No Fees and No Charges.</u>** There is no sales commission and Landmark Capital II, LLC will pay any transfer fee.

**Exhibit EE.**

75. In communications received by Limited Partners dated August 6, 2015 and August 5, 2015, reduced the cash distribution per unit to $1,793.47, a miniscule fraction of the financials from the 2014 operations, which have not as yet been disclosed. **Exhibit GG and HH.**

76. Somerset Associates has conspired with other Defendants since 1999 in outrageous conduct that entitled Plaintiffs to punitive damages.

WHEREFORE, Plaintiffs request an accounting of Somerset Associates' books compensatory relief in excess of $750,000, punitive damages, attorney's fees, costs, and equitable relief as determined by the Court.

Count II
RICHARD C. ANGINO AND ALICE K. ANGINO V. WARREN GP CORP., WARREN NMGP, LLC, c/o LEHMAN BROTHERS HOLDINGS, INC., SOMERSET ASSOCIATES, THE SOMERSET GP ASSOCIATES, SOMERSET MFP, INC., CHUBB ASSOCIATES, LP, THE CHUBB CORPORATION, FEDERAL INSURANCE COMPANY, AND ERNST & YOUNG, LLP
Accounting

77. Plaintiffs incorporate all of the previous allegations by reference.

78. Plaintiffs in response to a solicitation by Somerset Associates on November 11, 1983 purchased two units of 276 units offered in accordance with the Confidential Private Placement Memorandum dated November 11, 1983 **(Exhibit A)**

79. Somerset Associates, together with the other named Defendants have

failed to accurately account for the income revenues and disbursements since 1999.

80. Defendants have a duty under good faith and fiduciary responsibility and reasonable expectations to properly account to minority limited partners, including Plaintiffs.

81. Defendants' actions have been outrageous and entitle Plaintiffs to punitive damages.

WHEREFORE, Plaintiffs request an accounting, compensatory relief substantially in excess of $750,000, punitive damages, and any and all damages provided by law or equity as determined by the Court.

## Count III
## Civil Conspiracy

82. Plaintiffs incorporate all of the previous allegations by reference.

83. Defendants and their predecessors for the last 15 years have conspired to deprive Plaintiffs of their appropriate share of the profits since 1999.

84. It is apparent from the initial 1983 Memorandum and the documents provided since that the various Defendants have conspired in such a fashion as to violate their fiduciary duties to Plaintiffs and Plaintiffs and other Limited Partners' reasonable expectations so as to benefit Chubb, and other entities who have bought out other Limited Partnership interests.

85. Initially, Plaintiffs and the purchasers of the 276 units were promised tax deductions for the first 15 years and profits and a substantial share in a valuable

property thereafter.

86. Plaintiffs obtained the tax deductions, but have not received the profits and/or benefitted from a substantial share in a valuable property thereafter.

87. Defendants and their predecessors conspired to buy out most of the limited partners at incredibly low prices.

88. Since profits commenced to be generated, the Defendants conspired to minimize the value of the subject asset, revenues generated, and expenses and distributed a miniscule fraction in an inappropriate way as excess cash to the non-redeeming Limited Partners.

89. On October 22, 2014, Landmark Capital II, LLC sent a misrepresenting communication that Plaintiffs had only paid $7,500 per unit and were entitled to a net cash of $15,000 per unit. **Exhibit EE, ¶54.**

90. There was reference to the fact that The Chubb headquarters was worth less than $20,000,000 at a time when by their admissions the real estate assets at cost net of accumulated depreciation was $78,247,972 in 2013.

91. Somerset Associates owns a 509,000 square foot building in Somerset County, New Jersey and if the value were less than $20,000,000 it would be less than $40.00 per square foot.

92. Somerset paid rent for 2012 and 2013 of $9,709,372, which at 10% would indicate a value approximately $100,000,000.

93. It is anticipated that discovery will reveal that all of the Defendants and their predecessors have conspired to improve Chubb's position and eliminate Plaintiffs and other limited partners' interest.

94. Defendants' conduct is outrageous and entitles Plaintiffs to punitive damages.

95. Somerset Associates' August 6, and August 5, 2015 communications from Warren/GP Corp. exemplify the conspiratorial nature of the Defendants' actions.

96. Somerset's August 6, 2015 communication to the limited partners signed by Warren/GP Corp. from 14911 Quorom Drive, Suite 200A, Dallas, TX 75254 references a distribution of $4,304 per unit in August 2014 and states that a distribution from 2014 operations will be paid in the near future whereas, a separate communication dated August 5, 2015 provided a cash distribution of $1793.48 per unit as excess cash flow from the Partnership's 2014 operations, which at this point have not been reported to the Plaintiffs. **Exhibits GG and HH.**

97. As of August 5 and 6, 2015, Plaintiffs had possession only of the financial statements for the years ending December 31, 2013 and 2012 (**Exhibit GG**).

98. The August 6, 2015 communication apparently was provided by Ernst & Young, LLP (EY) as a report of independent auditors.

99. The August 6, 2015 communication including the financial statements for the years ending December 31, 2013 and 2012 and the report of independent auditors, (**Exhibit GG**), references total assets as of December 31, 2012 as $7,384,363 and as of December 31, 2013, $6,975,517.

100. The real estate assets are referenced at cost, net of accumulated depreciation of $78,247,972 as zero. Other assets, net of accumulated amortization of $10,010,983 are referenced as $3,046,819 in 2013, $3,627,166 in 2012 or total of $6,975,517 in 2013, $7,384,363 in 2012.

101. The true assets of Somerset exceeds $100,000,000.

102. Under Liabilities and Partners' Deficit, there is reference to accrued interest payable (Note 5), Mortgage notes payable, Deferred capital contributions with the total liabilities reduced from $39,265,095 in 2012 to $33,778,445 in 2013 with a reduction of the partners' deficit from $31,880,732 to $26,802,928 or a Total Liabilities and Partners' Deficit in 2012 of $7,384,363 and $6,975,517 in 2013.

103. Note 5 references the first mortgage of $67,000,000 and an unauthorized restructuring on September 12, 1996 of $156,155,000, which was contrary to the interests of the minority limited partners, including Plaintiffs. Only $18,968,857 went to the Limited Partners.

104. The restructuring required $10,000,000 semi-annually reducing

money available for distribution through 2013, which was contrary to the interests of the minority Limited Partners, including Plaintiffs.

105. The 2012/2013 financial statements reference a reduction in the Interest expense and Total expenses and excess of revenues over expenses for 2012 of $5,691,193 and $6,077,804 in 2013 with a similar allocation of revenues over expenses increasing for the limited partners from $969,660 to $1,035,536. **Exhibit GG**.

106. Defendants' action have been outrageous and fraudulent entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiffs request an accounting, compensatory relief substantially in excess of $750,000, punitive damages, attorney fees, and any and all damages provided by law or equity as determined by the Court.

## Count IV
## Fraud, Deceit and Misrepresentation

107. Plaintiffs incorporate all of the previous allegations by reference.

108. It is clear from the background facts that Defendants and their predecessors have been guilty of fraud, deceit and misrepresentation in reporting millions of dollars of profit, assuming obligations contrary to the purposes of the initial offering, contrary to the fiduciary obligations and the minority limited partners reasonable expectations and providing the minority limited partners, including Plaintiffs with a small fraction of same while at the same time requiring

minority limited partners and Plaintiffs to report on their state and federal income taxes and the income taxes of the State of New Jersey, income they never received.

109. Defendants and their predecessors have for the past 15 years been providing reports that are fraudulent, deceitful and full of misrepresentations.

WHEREFORE, Plaintiffs request an accounting, compensatory relief substantially in excess of $750,000, punitive damages, attorney's fees, and any and all damages provided by law or equity as determined by the Court.

Respectfully submitted,

ANGINO & LUTZ, P.C.

*/S/ Richard C. Angino*
*Richard C. Angino, Esquire*
I.D. No. 07140
4503 N. Front Street
Harrisburg, PA 17110
Phone: (717) 238-6791
Fax: (717) 238-5610
Attorneys for Plaintiffs

Date: August 12, 2015